# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE E. KERSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 16-12631-FDS |
| ) | |
| AMERICAN HONDA FINANCE ) | |
| CORPORATION and HERB ) | |
| CHAMBERS 1189, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SANCTIONS

**SAYLOR, J.**

This is an action arising out of the attempted repossession of a vehicle. Plaintiff George Kersey is a former attorney proceeding *pro se*.[1] He leased a vehicle from Herb Chambers 1186, Inc. Financing was provided by defendant American Honda Finance Corporation ("AHFC"). Kersey eventually defaulted on his lease payments, leading AHFC to begin the process of repossessing his vehicle. He brought suit, contending that AHFC breached the lease agreement and violated Rhode Island's Automobile Repossession Act. AHFC then counterclaimed for the remaining amount due under the lease agreement. The parties have cross-moved for summary judgment. In addition, AHFC has moved for sanctions for Kersey's failure to comply with a

---

[1] Kersey has been disbarred in New Hampshire and Massachusetts and disciplined in a variety of jurisdictions. *See, e.g.*, *In re George E. Kersey*, 444 Mass. 65 (2005); *see also Kersey v. Becton Dickinson & Co.*, 2016 WL 4492867 (D. Mass. August 25, 2016); *Kersey v. Becton Dickinson & Co.*, 2011 WL 2516162 (3d Cir. June 24, 2011); *In re Kersey's Case*, 150 N.H. 585 (2004); *In re Kersey*, 185 N.J. 130 (2005); *In re George E. Kersey*, 27 A.D. 3d 118 (N.Y. App. Div. 2006); *In re George E. Kersey*, 775 A.2d 1106 (D.C. 2001).

court order. For the following reasons, plaintiff's motion for summary judgment will be denied, defendant's motion for summary judgment will be granted, and defendant's motion for sanctions will be denied as moot.

I.  **Background**

The following facts are as set forth in the record.

    A.  **Factual Background**

George Kersey is a citizen of Rhode Island. (Compl. ¶ 1).[2] On December 13, 2013, he signed a vehicle lease agreement to lease a 2013 Honda Civic from Herb Chambers 1186, Inc., a Massachusetts corporation. (*Id.*; Def. Ex. 3 ¶ 17). Under the lease agreement, he was obligated to make monthly payments of $221.00 for 36 months. (Def. Ex. 3 ¶ 6). The contract also included a provision that provided him the option to purchase the vehicle outright either before or at the end of the lease term. (*Id.* ¶¶ 8, 25). Herb Chambers 1186, Inc., as lessor, assigned its interest in the lease to AHFC. (*Id.* ¶ 43).[3]

The lease also included a default provision, which provided in relevant part: "[The lessee] will be in default if: (a) [the lessee] fail[s] to make any payment when due under this lease and any required period before a default may occur has elapsed . . . ." (*Id.* ¶ 34). The provision further stated: "In the event of default, lessor may do any or all of the following . . . (b) terminate the lease and [the lessee's] rights to possess and use the vehicle; (c) take possession of the vehicle by any method or manner permitted by law; (d) determine [the lessee's] termination liability on an early termination basis which [the lessee] agree[s] to pay

---

[2] However, he receives his mail at a Framingham, Massachusetts address. (Compl. ¶ 1).

[3] AHFC, doing business as Honda Financial Services, is a California corporation registered to do business in Massachusetts. (Compl. ¶ 1). AHFC is the lease administrator for Honda Lease Trust, the formal assignee set forth in the lease agreement. (Def. Ex. 3 at 1).

2

immediately; . . . and (f) pursue any other remedy permitted by law." (*Id.*).

Two months into the lease, Kersey failed to make timely payments and defaulted. (Def. Ex. 7 at 19). On April 18, 2014, AHFC mailed a pre-repossession letter titled "Rights of Defaulting Consumer under Rhode Island General Laws" to Kersey's Rhode Island and Massachusetts addresses. (Def. Ex. 12). The letter stated that Kersey would have 21 days to cure his default, or AHFC would repossess the vehicle. (*Id.*). On April 25, 2014, AHFC mailed Kersey a "Past Due Account" letter, again requesting immediate payment. (Def. Ex. 15). It is undisputed that Kersey received these letters. (Kersey Dep. at 111).

On May 13, 2014, more than 21 days after AHFC mailed the pre-repossession letter, AHFC assigned the vehicle for repossession. (Andrews Aff. ¶ 13). The next day, Kersey's account was billed a $105 repossession fee. (*Id.* ¶ 14). Despite Kersey remaining in default, the vehicle was never recovered. (*Id.* ¶ 16). It appears that over the next two years, Kersey made intermittent payments in an attempt to remain current on the lease. (*See generally* Def. Ex. 7).

On April 13, 2016, AHFC mailed Kersey a second pre-repossession letter titled "Rights of Defaulting Consumer under Rhode Island General Laws." (Def. Ex. 17). Again, the letter stated Kersey would have 21 days to cure his default. (*Id.*). On April 25, 2016, AHFC mailed another "Past Due Account" letter. (Def. Ex. 19). An invoice generated on June 21, 2016 stated that Kersey owed: (1) two past monthly payments; (2) the June 2016 monthly payment; (3) seven late fees; (4) an outstanding Rhode Island registration fee; and (5) the $105 repossession fee charged to his account on May 14, 2014. (Andrews Aff. ¶ 20; Def. Ex. 7 at 4).

Although the lease was scheduled to end in December 2016, Kersey failed to return the vehicle or inform AHFC of its location. (Andrews Aff. ¶¶ 21, 24-25). Presumably, at this point Kersey has stolen the vehicle. AHFC has calculated the total amount owed by Kersey to be

3

$13,408.80.  (*Id.* ¶ 24).

B.     **Procedural Background**

Kersey filed suit on December 27, 2016, against AHFC and "Herb Chambers 1189, Inc." His complaint appears to assert two counts against defendants:  a claim for breach of contract and a claim for violation of R.I. Gen. Laws § 6-51.  The complaint stated that plaintiff sought to recoup five repossession charges of $105, monetary damages in the amount of $10,000, and punitive damages in the amount of $1 million.  (Compl. at 3-4).

On June 1, 2017, AHFC filed a motion to amend its answer to assert a counterclaim against Kersey for breach of contract.  The Court granted the motion on July 10, 2017.

In the interim, Kersey had failed to properly serve Herb Chambers 1186, Inc., because he had erroneously brought suit against "Herb Chambers 1189, Inc."  On July 10, 2017, the Court ordered Kersey to file an amended complaint by July 20, 2017, identifying the correct name of that defendant.  In addition, the Court ordered Kersey to properly serve the amended complaint on Herb Chambers 1186, Inc., by August 19, 2017.  No amended complaint was ever filed, and Herb Chambers 1186, Inc. was never served.

On December 20, 2017, Magistrate Judge Cabell granted two motions to compel filed by AHFC, ordering Kersey to provide further responses to interrogatories and produce various documents.  (Docket No. 57).  However, Kersey failed to comply, and AHFC filed a motion for sanctions on January 11, 2018.  Thereafter, the parties cross-moved for summary judgment.

II.    **Legal Standard**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).

4

Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256–57.

### III. <u>Analysis</u>

#### A. <u>Plaintiff's Claims</u>

As stated earlier, the *pro se* complaint appears to bring claims for breach of contract and improper repossession of the Honda Civic in violation of R.I. Gen. Laws § 6-51.

To prove a breach of contract under Massachusetts law, a plaintiff must show "that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted); *accord Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 720 (1st Cir. 1999). If a contract is unambiguous, a court must interpret it in accordance with its ordinary and plain meaning. *See Citation Ins. Co. v. Gomez*, 426 Mass. 379, 381 (1998).

5

In its incontrovertible that the lease agreement plaintiff signed on December 13, 2013, governs the relationship between the parties.[4] The explicit terms of the contract stated that plaintiff was obligated to make timely monthly payments of $221. (Def. Ex. 3 ¶ 6). The parties agree that plaintiff defaulted by failing to make his payments. (Andrews Aff. ¶¶ 9-12, 17-22; Kersey Dep. at 64-65).[5] AHFC, as assignee to Herb Chambers 1186, Inc.'s interest, was accordingly allowed to take various actions, including terminating the lease and repossessing the vehicle. (Def. Ex. 3 ¶¶ 34, 43). Therefore, defendant did not breach the contract by attempting to repossess plaintiff's vehicle.

The complaint also alleges that defendant violated the Rhode Island Automobile Repossession Act, as codified in R.I. Gen. Laws § 6-51. That statute provides that after a consumer defaults on a vehicle lease, the lessor cannot repossess the vehicle unless the consumer is first provided 21 days to cure the default. R.I. Gen. Laws § 6-51-3(c). In addition, the statute requires that written notice be given to the consumer that "conspicuously state[s] the rights of the consumer" and includes the heading, "Rights of Defaulting Consumer under Rhode Island General Laws." *Id.*

The evidence plainly shows that defendant mailed such letters to plaintiff before attempting to repossess the vehicle. The letters were sent on April 18, 2014, and April 13, 2016, and warned plaintiff that unless he cured his default within 21 days, defendant would repossess the vehicle. (Def. Exs. 12, 17). Accordingly, the undisputed evidence shows that defendant did

---

[4] In his deposition, plaintiff conceded that he entered into the lease agreement. (Kersey Dep. at 34).

[5] In his deposition, plaintiff was asked, "Mr. Kersey, do you agree that you never made 36 monthly payments as contemplated by [the lease]?" (Kersey Dep. at 64-65). Plaintiff replied, "That is correct." (*Id.* at 65).

not violate the Rhode Island Automobile Repossession Act, and summary judgment on plaintiff's claims will be granted to defendant.[6]

B. **Defendant's Counterclaim**

In its amended answer, defendant brings a counterclaim for breach of contract. (Am. Ans. ¶¶ 17-20). As set forth above, plaintiff conceded that he failed to make certain lease payments and has failed to return the vehicle to defendant. Therefore, plaintiff breached the lease agreement.

Plaintiff has opposed the counterclaim by contending that defendant "was not the lessor or assignee of the lease agreement" and that defendant "had cancelled the lease agreement." (Pl.'s Mot. for SJ ¶ 2). However, the lease agreement plainly states that Herb Chambers 1186, Inc. assigned its interest as lessor to AHFC. (Def. Ex. 3 ¶ 43). Defendant was thus entitled to all legal rights and remedies that Herb Chambers 1186, Inc. could have pursued, including repossession. In addition, plaintiff has provided no evidence showing that defendant "cancelled the lease agreement." Accordingly, summary judgment on the counterclaim will be granted to defendant.

In its memorandum, defendant states that it is seeking judgment in the amount of $13,404.80. (Def. Mem. in Supp. at 15). However, it is unclear how defendant arrived at that amount. Defendant will be directed to file with the court by May 11, 2018, a statement showing how that amount was calculated.

In addition, defendant seeks reasonable attorneys' fees and costs. (Def. Mem. in Supp. at 15). In Massachusetts, the "usual rule" "is that the litigant must bear his own expenses."

---

[6] Defendant contends that the lease specifies that the relationship between the parties was to be governed by Massachusetts law, and that Massachusetts does not have an analogous provision requiring pre-repossession notice. However, as plaintiff's claim under Rhode Island law clearly fails, the Court need not address this argument.

7

*Waldman v. Am. Honda Motor Co., Inc.*, 413 Mass. 320, 321 (1992).  Here, however, the lease agreement specified that in "event of default," the lessee agreed "to pay lessor for all collection and legal costs, including all reasonable attorneys' fees and court costs lessor incurs, to the extent permitted by law." (Def. Ex. 3 ¶ 34).  The Court will therefore award reasonable attorneys' fees and costs to defendant.  The amount of those fees and costs will be determined at a later stage in this proceeding.

### C. Defendant's Motion for Sanctions

Defendant has also moved for sanctions in light of plaintiff's refusal to comply with Magistrate Judge Cabell's order.  In its motion, defendant requests that: (1) plaintiff be found in contempt of court; (2) plaintiff be deemed to have admitted certain requests for admissions; (3) the complaint be dismissed; and (4) default judgment be entered against plaintiff on defendant's counterclaim.  Because the Court has addressed the parties' dispositive motions on the merits, the motion for sanctions is denied as moot.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED, defendant's motion for summary judgment is GRANTED, and defendant's motion for sanctions is DENIED as moot.

Defendant is further directed to file with the Court by May 11, 2018, a statement showing how the $13,404.80 sought in damages was calculated.

With respect to the award of attorneys' fees and costs, defendant is further directed to file a memorandum and supporting affidavits and exhibits by May 11, 2018; any opposition to defendant's memorandum shall be filed by May 25, 2018; and any reply memoranda to oppositions shall be filed by June 1, 2018.

**So Ordered.**

Dated: April 20, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge